[Cite as *State v. Vargo*, 2018-Ohio-2487.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## BELMONT COUNTY

STATE OF OHIO
BARNESVILLE MAYOR'S COURT,

Plaintiff-Appellee,

v.

EDWARD L. VARGO,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 17 BE 0021

---

Criminal Appeal from the
Belmont County Court, Western Division, of Belmont County, Ohio
Case No. 17 TR D 00016.

**BEFORE:**
Cheryl L. Waite, Gene Donofrio, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Daniel P. Fry*, Belmont County Prosecutor and
*Atty. Marlin J. Harper*
109 E. Church St., Barnesville, Ohio 43713, for Appellee

*Edward L. Vargo*, *Pro se* Appellant, 33228 Walter Ridge Rd., Woodsfield, Ohio 43793.

Dated: June 22, 2018

---

**WAITE, J.**

**{¶1}** Appellant, Edward L. Vargo, *pro se*, appeals his conviction following a bench trial in the Western Division of Belmont County Court. Appellant was found guilty of violating Ordinance 331.04, captioned "Overtaking and Passing On Right," a minor misdemeanor. Following his conviction, the trial court imposed a fine in the amount of $150.00. Appellant contends that his conviction is against the manifest weight of the evidence, and that the trial court erred when it considered a grainy surveillance video that was neither turned over to Appellant nor played at the trial. For the following reasons, Appellant's conviction is affirmed.

Facts

**{¶2}** On December 15, 2016 at approximately 7:00 p.m., Appellant and his wife, Merry Vargo, were traveling southbound on North Chestnut Street in St. Clairsville in a Jeep Wrangler. The Vargos' automobile was directly behind a Pontiac G6 driven by Jessica Shrewsbury. North Chestnut Street is a two-lane highway, with parallel parking spaces on both sides of the street. According to Appellant's testimony, he was travelling at a speed of fifteen to twenty miles per hour.

**{¶3}** When Shrewsbury slowed her vehicle for the traffic light at the intersection of Main Street, she activated her left turn signal. Appellant began to pass her vehicle on the right while still in the single lane of traffic. Merry testified that she saw Shrewsbury's left turn signal flash at least twice.

**{¶4}** At some point, Shrewsbury decided to turn right instead of left onto North Main Street. Appellant testified that when he realized Shrewsbury was turning right he blew the horn and hit his brake, expecting that Shrewsbury would realize that he was to her right and stop her car. However, Shrewsbury continued her right turn onto North

Main Street, colliding with the driver's side of the Jeep and tearing off the left front flare and front bumper.  Appellant testified that he turned into the westbound lane on Main Street in an effort to avoid further damage to his Jeep.

{¶5}    Shrewsbury continued on North Main Street with Appellant in pursuit.  She stopped at the next intersection.

{¶6}    When Shrewsbury exited the car, she told Appellant that she did nothing wrong.  Shrewsbury's passenger, who claimed to be her brother, told Appellant that the accident was Shrewsbury's fault and asked Appellant not to involve the police because they could "work [it] out."  (Trial Tr., p. 18.)  Neither Appellant nor his wife had a mobile phone, but several businesses were within walking distance.

{¶7}    Shrewsbury's passenger told Appellant that Shrewsbury had insurance, but no insurance card.  He explained that Shrewsbury's husband had "totaled" his truck the previous week and that he probably had the insurance card.  They exchanged information, and Shrewsbury's passenger promised that Shrewsbury would contact Appellant the following day to make arrangements to repair the Jeep.

{¶8}    Appellant filed an accident report on December 16, 2016.  Following a police investigation of the crash, Appellant was cited for illegally passing Shrewsbury on the right.

{¶9}    The matter proceeded to trial on January 19, 2016.  Prior to trial, Appellant explained to the trial court that he sought legal representation but was told that his case was "too trivial" and that he would represent himself.  (Trial Tr., p. 20.)  The trial court heard testimony from Barnesville Police Department Patrolman Cody Michael Lucas, who investigated the collision.  Appellant and his wife also testified.

{¶10} As part of his investigation, Patrolman Lucas reviewed video from a camera mounted on a pole near the intersection in question. The camera had captured the accident. According to the patrolman's testimony, Appellant "was traveling at an excessive rate of speed with no caution to the intersection itself." (Trial Tr., p. 8.) Patrolman Lucas further testified that "[t]he only time that [Appellant] stopped was at contact with [Shrewsbury's] vehicle." Merry also testified that Appellant did not stop the Jeep until it collided with Shrewsbury's car. (Trial Tr., p. 14.)

{¶11} The trial court inquired, "[s]o he was coming, in your opinion, at an excessive rate of speed and tried to pass [Ms. Shrewsbury] after she had turned her right turn signal on?" Patrolman Lucas replied, "[y]es." (Trial Tr., p. 8.)

{¶12} At the conclusion of the testimony, the trial court requested a copy of the pole camera video that captured the accident. Appellant did not at any time object to the trial court's request for this video or state on the record that he had not been provided a copy prior to the trial. The trial court took the matter under advisement pending review of the video, however, it was not admitted into evidence.

Law

{¶13} Ordinance 331.04, which parrots R.C. 4511.28, reads in pertinent part:

(A) The driver of a vehicle or trackless trolley may overtake and pass upon the right of another vehicle or trackless trolley only under the following conditions:

(1) When the vehicle or trackless trolley overtaken is making or about to make a left turn;

(2) Upon a roadway with unobstructed pavement of sufficient width for two or more lines of vehicles moving lawfully in the direction being traveled by the overtaking vehicle.

(B) The driver of a vehicle or trackless trolley may overtake and pass another vehicle or trackless trolley only under conditions permitting such movement in safety. The movement shall not be made by driving off the roadway.

{¶14} In its docket and journal entry filed on April 3, 2017, the trial court appears to concede that Appellant met one requirement of subsection A of the ordinance: North Chestnut Street is a roadway with unobstructed pavement of sufficient width for two or more lines of vehicles to move lawfully in the direction being traveled by the overtaking vehicle. The trial court also appears to accept Appellant's testimony that Shrewsbury initially signaled a left turn at the intersection.

{¶15} Relying on the catch-all provision of subsection B, however, the trial court ultimately concluded that the conditions under which Appellant attempted to pass Shrewsbury were unsafe:

It is clear from the pole video that the lead vehicle was in the process of a right turn when [Appellant's] vehicle attempted to pass. Even if the lead vehicle driver had changed its mind and was initially indicating a left turn the change was made [so] that [Appellant] should have had plenty of time to not overtake the vehicle and attempt to pass.

(04/03/17 J.E.)

Analysis

Case No. 17 BE 0021

{¶16} *Pro se* Appellant advances a lengthy, multi-part assignment of error in this appeal.

ASSIGNMENT OF ERROR

APPELLANT'S CONVICTION OF BARNESVILLE ORDINANCE 331.04 WAS BASED ON EVIDENCE THAT THE APPELLANT DID NOT HAVE ACCESS TO AND WAS NOT ALLOWED TO SEE. THIS IS AGAINST THE APPELLANT'S CONSTITUTIONAL RIGHTS AND IS PLAIN ERROR. THE TRIAL COURT ERRED BY USING THE POLE CAMERA VIDEOS, A TWO DIMENSIONAL PICTURE TAKEN AT NIGHT, TO CONCLUDE THAT THERE WAS SUFFICIENT DISTANCE TO STOP BEFORE THE ACCIDENT. BUT OVERLOOKED THE ILLEGAL RIGHT TURN MADE BY THE LEAD VEHICLE. THIS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

THE TRIAL COURT ERRED BY NOT RULING ON THE ILLEGAL RIGHT TURN THAT JESSICA SHREWSBURY MADE, BUT STATED "EVEN IF THE LEAD VEHICLE DRIVER HAD CHANGED ITS MIND AND WAS INITIALLY INDICATING A LEFT TURN THE CHANGE WAS MADE THAT THE DEFENDANT SHOULD HAVE HAD PLENTY OF TIME TO NOT OVERTAKE THE VEHICLE AND ATTEMPT TO PASS." THIS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

THE BARNESVILLE POLICE, THE PROSECUTOR AND THE JUDGE ERRED BY OVERLOOKING OR IGNORING THE THREE TRAFFIC CODE VIOLATIONS THAT JESSICA SHREWSBURY MADE, ILLEGAL

RIGHT TURN, FAILING TO STOP AFTER AN ACCIDENT, AND FAILING TO EXCHANGE DRIVER INFORMATION. THIS IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶17}** From this, we have gleaned that two assignments of error are actually being advanced on appeal. First, Appellant contends that the state committed a discovery violation when it failed to turn over the video prior to trial. Second, Appellant contends his conviction is against the manifest weight of the evidence.

**{¶18}** Before reaching the substantive issues in this case, it is important to note that although courts make certain allowances for *pro se* litigants, these litigants are ultimately held to the same standards of conduct and are presumed to have the same knowledge of the law as though they were represented by counsel. *Sky Bank v. Hill*, 7th Dist. No. 03 MA 114, 2004-Ohio-3046, ¶ 9. We have recognized that, although a trial judge may take on many roles during litigation, in our adversarial legal system it is not the function of the judge to act as counsel for *pro se* litigants. *Id.*

**{¶19}** No written request for discovery was filed in this case. Crim.R. 16. Appellant asserts that he requested the opportunity to view the pole camera video prior to trial, but the state denied his request. Because Appellant contends that he made a verbal request, there is no evidence of any such request in the record.

**{¶20}** The overall objective of the criminal rules is to remove the element of gamesmanship from a trial. *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 2, citing *State v. Howard*, 56 Ohio St.2d 328, 333, 383 N.E.2d 912 (1978). The purpose of the discovery rules is to prevent surprise and the secreting of evidence favorable to one party. *Id.*

**{¶21}** When considering whether a discovery violation occurred, courts must consider three factors: (1) whether the failure to disclose was willful; (2) whether foreknowledge of the undisclosed material would have benefitted the defendant in trial preparation; and (3) whether the accused was prejudiced by the late disclosure. *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, at ¶ 35, citing *State v. Parson*, 6 Ohio St.3d 442, 453 N.E.2d 689 (1983). It is well settled that "[a] trial court must inquire into the circumstances surrounding a discovery rule violation and, when deciding whether to impose a sanction, must impose the least severe sanction that is consistent with the purpose of the rules of discovery." *Darmond* at ¶ 42, citing *Lakewood v. Papadelis*, 32 Ohio St.3d 1, 511 N.E.2d 1138 (1987).

**{¶22}** However, an appellate court normally does not resolve an alleged error if it was never brought to the attention of the trial court "at a time when such error could have been avoided or corrected by the trial court." *State v. Carter*, 89 Ohio St.3d 593, 598, 734 N.E.2d 345. In the absence of an objection, this Court may only examine the court's actions for plain error. *Id.*

**{¶23}** Plain error should be used "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240. A claim of plain error fails unless, but for the error, the outcome of the trial would have been different: "[t]he test for plain error is stringent. A party claiming plain error must show that (1) an error occurred, (2) the error was obvious, and (3) the error affected the outcome of the trial." *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, at ¶ 378.

**{¶24}** There are several reasons Appellant's assignment here is not well-taken. First, Appellant failed to properly request a copy of the video and no such request appears in the record. Second, Appellant failed to object to the trial court's proposed use of the video. Assuming *arguendo* that Appellant had properly objected, his assignment would still fail. Appellant has not demonstrated that the alleged error affected the outcome of the trial. The trial court's conclusion is supported by Patrolman Lucas's testimony, and the court clearly believed this testimony to be credible. Further, Merry conceded that Appellant sounded the horn when he realized Shrewsbury was making a right turn, but did not engage the brake until the Jeep had collided with Shrewsbury's car. (Tr., p. 14.) Hence, this record reveals no manifest miscarriage of justice occurred as a result of the state's failure to provide a copy of the video to Appellant. Accordingly, the first issue contained in his assignment of error, an alleged discovery violation, is without merit.

**{¶25}** In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119. "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence." *Thompkins* at 387, 678 N.E.2d 541.

**{¶26}** Regardless, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997).

**{¶27}** App.R. 9 governs the record on appeal, and provides in relevant part:

The original papers and exhibits thereto filed in the trial court, the transcript of proceedings, if any, including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court shall constitute the record on appeal in all cases.

App.R. 9(A)(1).

**{¶28}** Because the video was not admitted at trial, it is not a part of the record on appeal. However, the record does reveal that the testimony of Patrolman Lucas and Appellant's wife support the decision of the trial court. The evidence, if believed, shows Appellant was traveling at an elevated rate of speed and did not immediately stop his vehicle when he realized that Shrewsbury was making a right turn. It is undisputed that there was only one lane of travel on the road at issue and Shrewsbury maintained the right of way. Even if Shrewsbury initially intended to turn left and changed her mind, Appellant at no time had the absolute right to pass her vehicle. The trial court did not lose its way or create a manifest miscarriage of justice when it convicted Appellant of a violation of Ordinance 331.04. Accordingly, the second issue contained in Appellant's assignment of error is also without merit.

### Conclusion

{¶29} For the foregoing reasons, Appellant's conviction is affirmed.

Donofrio, J., concurs.

Robb, P.J., concurs.

---

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Belmont County Court, Western Division, of Belmont County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**